IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

INTRUSTMENT NW INC., *a personal
representative for the Estate of Francisco Torres,
Deceased,*

Case No. 1:23-cv-00886-CL

                    Plaintiff,

**OPINION AND ORDER**

        v.

KLAMATH CHILD AND FAMILY
TREATMENT CENTER, INC., *et al,*

                    Defendants.

_____

CLARKE, Magistrate Judge.

   This is a prisoner civil rights case arising out of the death of Francisco Torres while he

was being detained at the Klamath County Jail on or about July 1, 2021. Plaintiff is the personal

representative for the Estate of Francisco Torres. Plaintiff brings claims on behalf of the Estate,

against Klamath County and the staff of the Klamath County Jail (collectively the "Klamath

defendants"), as well as Klamath Child and Family Treatment Center, also known as Klamath

Basin Behavioral Health ("KBBH") and the KBBH staff who were working in the jail during the

incident (collectively the "KBBH defendants").

The case comes before the Court on Plaintiff's Motion for Leave to File an Amended Complaint (#33). The Klamath defendants and the KBBH defendants oppose the motion. After consideration of the parties' respective positions, and an oral argument held on February 26, 2025, Plaintiff's Motion is GRANTED. Plaintiff shall file a clean copy of the First Amended Complaint by April 1, 2025.

## BACKGROUND

This case arises from the July 1, 2021, suicide of Francisco Torres ("Torres"). At the time of Torres's death, he was incarcerated in the Klamath County Jail ("Jail"). Prior to filing suit, Plaintiff's counsel sent a records request to Klamath County dated December 27, 2021, requesting all documents relating to Francisco Torres. Kaplan Decl. ¶ 4 and Ex. 1. Plaintiff asserts that on December 29, 2021, KBBH denied the existence of any responsive documents to Plaintiff's request. KBBH also asserted Torres was never a KBBH client nor received KBBH services, and did not produce any responsive documents. Kaplan Decl. ¶ 5 and Ex. 3. On January 12, 2022, the County responded by asserting it was producing "all" jail documents related to Torres. Henderson Decl. Ex 2 ECF-40. The County produced the documents in an electronic file called "Jail Docs." The jail documents combined multiple files, which Plaintiff claims were incomplete and not organized in any fashion that would identify a medical file. Kaplan Decl. ¶6 and Ex. 3. Many of the documents produced prior to litigation were two-sided documents, and Plaintiff claims the County only produced one side of each page. The documents also listed incomplete names of individuals or illegible names. Plaintiff asserts that the County did not produce documents noting who was working in the jail at relevant times, nor who was present in the jail at relevant times in the days leading up to Torres's death. Kaplan Decl. ¶ 9-10.

Plaintiff claims that Klamath County also did not require any of its deputies or employees to draft any incident reports. The sole "investigation" was conducted by a local police department and was focused on determining if the death was a suicide or homicide. Medical staff, KBBH staff, policy makers, or mental health employees were not mentioned or addressed in local Police Report. Kaplan Decl. ¶11.

Plaintiff's Complaint was filed on June 19, 2023. On or about October 2, 2023, Plaintiff sent discovery requests to the County and KBBH. The County noted in its Interrogatory Response dated December 1, 2023, that Roger Cummins was the medical director of the Klamath County Jail responsible for providing adequate medical care, and that he had rendered care to Torres while Torres was incarcerated. *See* Kaplan Decl. ¶ 14. Plaintiff claims that this was the first time Plaintiff's counsel became aware of Roger Cummins. The County also answered interrogatories requesting information regarding the identification of people that had any responsibility for the customs, practices, policies, procedures, protocols, and guidelines concerning mental health and/or health care, and any evaluation of treatment of Adults in Custody at the Jail. The County did not identify Sgt. Stripling nor Roger Cummins in its response to this interrogatory. Kaplan Decl. ¶14. Plaintiff claims that at depositions Plaintiff's counsel became aware that Cummins and Sgt. Stripling were both supervisors at the jail that implemented policies, protocols, and procedures regarding healthcare and suicide prevention.

Plaintiff claims that on December 4, 2023, in response to Requests for Production, the County produced one 59-page document, which the County referred to as the "Medical file from the Jail." A review of the file indicated that pages were missing. Plaintiff's counsel brought this to the County's attention. It was later discovered that only one side of each double-sided document had been discovered to Plaintiff. Plaintiff's counsel requested the full file. On May

22, 2024, the County produced another 118-page copy of a document it referred to as a "medical file." This 118-page medical-file produced in May 2024 noted that "Roger" was treating Torres for a heart issue on June 30, 2021, and throughout Torres's incarceration. Kaplan Decl. ¶ 15.

On December 30, 2023, KBBH responded to Plaintiff's Interrogatories that were served on KBBH on October 2, 2023. Kaplan Decl. ¶ 16. At that time, Plaintiff learned that an individual named Emily Williams was tasked with being the KBBH "jail liaison" with the County while Torres was incarcerated.[1] Plaintiff claims to have learned for the first time that Bridie Vickery ("Vickery") supervised both Williams and defendant Candace Weddell-Tramp.

Plaintiff claims that on May 14, 2024, KBBH produced emails and a document noting that Williams had developed a protocol called a "cheat sheet" that Vickery had adopted. Kaplan Decl. ¶ 17. Plaintiff claims that this cheat sheet protocol was the policy that KBBH and Weddell-Tramp were relying upon to provide services to AIC's, including Torres, in the weeks leading up to Torres's death. Kaplan Decl. ¶ 17. Also on May 14, 2024, KBBH produced for the first time a document titled, "In-Custody KBBH Client List." The document noted on June 29, 2021, Francisco Torres "Would like to speak w/ someone believes to have MH concerns would like evaluation." The list did not identify the name of the person who drafted it, nor did it contain any KBBH employee names.

Plaintiff further claims that at the depositions taken on May 28, 2024, Plaintiff learned for the first time that Vickery was acting in a temporary role to supervise Weddell-Tramp and Williams, and that she would also coordinate mental health services for AIC's at the jail. This came as a surprise to Plaintiff's counsel because, in its interrogatories, KBBH never identified

---

[1] Plaintiff has withdrawn the portion of the motion for leave to amend that sought to add claims against Emily Williams, but the allegations regarding Ms. Williams are included here to the extent they provide clarity about the other proposed amendments.

Vickery as a person having any responsibility for providing mental healthcare, or treatment or advice concerning Torres during his confinement. Kaplan Decl. ¶ 20.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Rule 15(a) creates a liberal policy in favor of granting leave to amend "so that matters may be decided on merit rather than 'bare pleadings.'" *Heffington v. Gordon*, No. 3:16-cv-02079- AC, 2017 U.S. Dist. LEXIS 119425, *2 (D. Or. July 28, 2017) citing *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). In determining whether leave to amend is appropriate, the court considers "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) quoting *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

Rule 15(c) provides that an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

"Rule 15(c)(1) incorporates the relation back rules of the law of a state when that state's law provides the applicable statute of limitations and is more lenient." *Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1200 (9th Cir. 2014). "As a result, if an amendment relates back under the state law that provides the applicable statute of limitations, that amendment relates back under Rule 15(c)(1) even if the amendment would not otherwise relate back under the federal rules." *Id.*

Here, while the motion at issue in this case is a Motion for Leave to Amend, the Defendants seek to disallow amendment based on the statute of limitations and a failure to meet the requirements of Rule 15. If the Court agrees with the Defendants, such a ruling would function more like a granting of summary judgment, as it would preclude specific claims against the proposed defendants, essentially disposing of said claims with prejudice. Similarly, both parties have submitted declarations and attached exhibits in support of their arguments, which usually necessitates converting a Rule 12(b)(c) or 12(c) motion into a motion for summary judgment.[2] However, the Court does not agree with Defendants and is not making an affirmative ruling as to any dispositive issue, therefore, Court need not convert this into a motion for summary judgment. The statute of limitations defense and equitable estoppel issue may be raised at the summary judgment phase of the case, and the Court will treat it as dispositive at that time.

## DISCUSSION

### I.    Plaintiff's Motion for Leave to File an Amended Complaint is GRANTED.

As discussed below, in evaluating Plaintiff's proposed amendments, the Court finds no bad faith, undue delay, prejudice to the opposing party, and/or futility. Most of Plaintiff's

---

[2] Fed.R.Civ.P. 12(d) states: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.

proposed amendments, which seek to clarify the allegations and conform Plaintiff's claims to the evidence produced in discovery, are not challenged by the defendants.

The defendants do object, however, to the new addition of three individual defendants. Klamath defendants and KBBH defendants both assert that the statute of limitations has run as to these individuals, and they assert that the claims alleged do not relate back to the original complaint. All of the defendants also claim that the newly added defendants will be prejudiced by the amendments. The Court disagrees.

### a. The Court finds no bad faith, undue delay, prejudice to the opposing party, and/or futility.

Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." In determining whether leave to amend is appropriate, the court considers "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).

Of all the factors, it is "the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). In evaluating prejudice, courts often consider whether "relevant deadlines would have to be continued as a result of the new pleading, the stage of discovery at the time of the amendment, the extent to which additional discovery would have to be conducted and the degree to which amendment may delay the proceedings." *Imblum v. Code Corp.*, 2017 WL 3594569, at *3 (S.D. Cal. Aug. 21, 2017). Absent prejudice, or a strong showing of any of the remaining factors, there exists a presumption under rule 15(a) in favor of granting leave to amend. *Eminence Capital, LLC*, 316 F.3d at 1052.

Bad faith exists if the amendment indicates that the plaintiff asserts baseless claims in an effort to prolong litigation. *Griggs v. Pace American Corp, Inc.*, 170 F.3d 877, 881 (9th Cir. 1999). The Court finds no evidence of bad faith present in this case.

Undue "[d]elay alone is not sufficient to justify the denial of a motion requesting leave to amend," *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987), but it is pertinent, particularly "when no reason is given for the delay." *Lockheed Martin Corp. v. Network Solutions Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). "Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.3d 1385, 1388 (9th Cir. 1990) (citations omitted). Here, there has been some delay – the case has been pending for two years. However, the parties are still conducting discovery, and the deadlines need to be reset, regardless of the proposed amendments. Plaintiff has been diligently pursuing his case and seeks to conform his allegations to the evidence exchanged in discovery, and to name additional parties their existence and involvement in the incident leading to the death of Mr. Torres has been discovered. As discussed below, Plaintiff has asserted that much of the delay was due to the inadequate responses to discovery by the defendants. The Court thus finds no undue delay.

As to prejudice, other than the added delay of litigation, no other specific prejudice appears to exist. The only specific prejudice raised by the defendants is the onerous task of responding to the litigation itself, which is not considered unfair prejudice to the newly added defendants or the current defendants. This is the most important factor, and the Court can find no undue prejudice to the parties by allowing the amendments.

The proposed amendments are also not futile or "clearly frivolous." *United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1402 (9th

Cir. 1990). Defendants assert some theories of their case and defense in order to show that

amendment here would be futile, but the Court is not convinced. All of the defendants'

arguments require the Court to consider evidence outside of the pleadings, which is not

appropriate for this stage of the case. Defendants will have their opportunity to defend the case

on the merits at summary judgment or at trial.

The Court cannot find any undue delay, prejudice, futility or bad faith. Leave to amend

should be granted when justice so requires, and the Court finds it is required here.

### b. Plaintiff has raised a question of fact as to whether the statute of limitations should be equitably tolled or estopped.

Federal law determines when a civil rights claim accrues. *Elliott v. City of Union City*, 25

F3d 800, 801–02 (9th Cir1994); *see also Lukovsky v. City and County of San Francisco*, 535 F3d

1044, 1048 (9th Cir 2008), cert denied sub nom., 129 S Ct 1997 (2009) (applying this rule even

when the limitations period is borrowed from state law because the federal statute does not

contain its own limitations period). "Accrual is the date on which the statute of limitations begins

to run; under federal law, a claim accrues 'when the plaintiff knows or has reason to know of the

injury which is the basis of the action." *Lukovsky*, 535 F3d at 1048 (citations omitted)

The Ninth Circuit recognizes two forms of "equitable modification," namely:

> equitable tolling and equitable estoppel. Equitable tolling requires
> that [the plaintiff] was excusably ignorant of the limitations
> period.... Equitable estoppel focuses on the defendant's actions.
> There must be evidence of improper purpose by the defendant, or of
> the defendant's actual or constructive knowledge that its conduct
> was deceptive.

*Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 (9th Cir), cert denied, 484 U.S. 986

(1987); *see also Deloney v. Tri-Cnty. Metro. Transp. Dist. of Oregon,* No. 3:11-CV-00977-ST,

2012 WL 5303667, at *6 (D. Or. Sept. 28, 2012), report and recommendation adopted, No. 3:11-

CV-00977-ST, 2012 WL 5303663 (D. Or. Oct. 25, 2012). Equitable tolling turns on "whether there was excusable delay by the plaintiff: 'if a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.'" *Johnson v. Henderson*, 314 F3d 409, 414 (9th Cir2002), *quoting Santa Maria v. Pac. Bell*, 202 F3d 1170, 1178 (9th Cir2000). "Equitable estoppel, on the other hand, focuses primarily on action taken by the defendant to prevent plaintiff from filing suit, sometimes referred to as 'fraudulent concealment.'" *Lukovsky*, 535 F3d at 1051 (citations omitted). "Broad tolling rules, such as those for . . . the pendency of other proceedings, equitable tolling, and equitable estoppel are borrowed from state law." *Duncan v. Ore.*, 05-1747-KI, 2007 WL 789433, at *3 (D. Or. March 14, 2007) *(citing Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002)).

To demonstrate an entitlement to equitable tolling, a plaintiff must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Credit Suisse Secs. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012) (citation omitted). To demonstrate an entitlement to equitable estoppel, a plaintiff must show: (1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance. *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991).

Equitable tolling is sparingly used in Oregon." *Rodriguez v. Williams*, 08-290-ST, 2010 WL 1542092, at *3 (D. Or. Feb. 25, 2010), report and recommendation adopted, 08-290-ST, 2010 WL 1541962 (D. Or. Apr. 14, 2010), aff'd, 447 F. App'x 850 (9th Cir. 2011). Under Oregon law, "equitable tolling is available [only] when circumstances outside of the control of [plaintiff] make it impossible to comply with [the] statute of limitations." *Id.*; *accord Coultas v.*

*Payne*, No. 3:11-CV-00045-AC, 2016 WL 740421, at *5 (D. Or. Feb. 24, 2016) (noting that the "doctrine of equitable tolling should be applied only to those claims where patent injustice would result in the court's failure to toll the statute of limitations").

In *Amaro*, the Ninth Circuit recognized that government stonewalling, misdirection, and refusal to produce discovery may toll the limitations period if it prevents a claimant from appreciating that she has a claim and dissuades her from filing. 653 F.3d 808 at 814. Other district courts in the Ninth Circuit have also found that a defendant's stonewalling that prevented a Plaintiff from discovering a party's involvement and potential liability in Plaintiff's claim can allow the court to equitably toll or estop the statute of limitations for that claim or for that defendant. *Young v. Mitsubishi Motors N. Am. Corp., Inc.*, 2024 WL 169062, at *5 (W.D. Wash. Jan. 16, 2024).

In *Young*, the plaintiffs argued that that they were entitled to tolling under both theories because the "extraordinary circumstances" prong of the equitable tolling test was met by the government's alleged fraudulent concealment. *Id.* The lawsuit was based on a tragic car accident that occurred when the plaintiffs were driving their vehicle through the Olympic National Park when a diseased Douglas fir blew over and fell onto the roof of the vehicle, injuring the driver, killing his wife and minor grandchild, and paralyzing another minor grandchild. *Id.* at *1. Following the accident, the plaintiffs hired an attorney and conducted a thorough investigation into potential claims. They sent FOIA requests to the National Parks Service (NPS) about the specific incident, as well as a follow up FOIA request asking for any Official Tree Hazard Program materials, or any other official policy on tree maintenance, inspection, or removal. NPS responded to the requests, but did not produce all of the information as fully as they could have done. Based on the limited discovery produced, the plaintiffs' expert arborist concluded that

"any claim [against the federal government] would be barred under the discretionary function exception to the Federal Tort Claims Act." The plaintiffs thus did not bring claims against NPS, but instead sued the manufacturer of the vehicle that they were driving on the day of the incident, Mitsubishi. More than a year later, Mitsubishi sent its own FOIA request to NPS and received "thousands of pages of documents in return." *Id.* Upon re-evaluation, using the documents provided to Mitsubishi, the expert arborist determined that NPS was responsible for the accident.

The *Young* court determined that the plaintiffs had raised a question of material fact as to fraudulent concealment, which prevented the government from using the statute of limitations as a defense to being added as a defendant. The court found that the plaintiffs had been diligently pursing their claims but had been prevented from discovering the government's culpability by NPS's failure to produce the discovery requested. In particular, the court pointed to Federal Rule of Civil Procedure 11(b), which precludes an attorney from asserting a claim which, after a reasonable inquiry, is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Thus, the court concluded that "Plaintiffs were ignorant of the true facts because of NPS' conduct, and plaintiffs may be entitled to toll the limitations period if they can convince the jury that the agency engaged in affirmative misconduct." ·

In this case, it is not reasonably disputed that Plaintiff has been pursuing his rights diligently. Plaintiff's attorney requested documents from the County and KBBH within a year of Mr. Torres' death and evaluated those in a timely manner. The Complaint was filed within the statute of limitations, naming all of the relevant parties for whom Plaintiff had any information and notice of their involvement in the situation based on the limited discovery provided.

Plaintiff has also raised a question of material fact regarding whether extraordinary circumstances stood in Plaintiff's way – namely, whether the defendants themselves stonewalled Plaintiff's efforts to discover which individuals were involved in the death of Mr. Torres. As in *Young*, the Plaintiff here was ignorant of the true facts because of the County's and KBBH's conduct in not producing complete discovery when it was requested. As in *Young*, Plaintiff here could not allege claims against individuals that it did not know were involved in the incident without running afoul of Rule 11 and the attorney's duty to file non-frivolous claims. Plaintiff has raised a question of fact as to whether the defendants here engaged in fraudulent concealment. This issue can be raised again at summary judgment if the evidence shows that there is no dispute of material fact. Or, if a dispute of fact continues to exist, Plaintiff may present the issue to a jury to determine if defendants engaged in affirmative misconduct.[3]

**c. The proposed amendments relate back to the original complaint.**

If the statute of limitations is equitably tolled or estopped such that the naming of the new defendants is timely, then "relation back" under Rule 15(c) is not required. However, even if relation back is required here, the proposed amendments meet the standard of Rule 15(c)(1), which provides that an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

---

[3] *See also James v. Sabella,* No. 22-CV-05939-SI, 2024 WL 2969964, at *1 n.2. (N.D. Cal. June 11, 2024) (Noting the parents' allegations that the County had "stonewalled" their requests for information about their son's death and that it was not until years later that they learned the facts underlying their son's death, the Court held that there were factual questions as to when the parents' claims accrued and whether there was a basis for equitable tolling).

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The requirement of subsection (A) is not in dispute. As to subsection (B), the amended allegations clearly arise out of the same conduct or occurrence set out in the original pleading, namely the death of Mr. Torres in the jail and the events and activities leading up to his death.

As to subsection (C), Rule 4(m) requires that a defendant be served within 90 days after the complaint is filed, unless the plaintiff shows good cause, in which case the Court is directed to grant an extension of that time.  Courts have construed Rule 4(m) to mean that a plaintiff should be given an additional [90][4] days after the filing of an amended complaint to serve any newly added defendants. *See Carmona v. Ross*, 376 F.3d 829, 830 (8th Cir. 2004) *citing City of Merced v. Fields*, 997 F.Supp. 1326, 1337–39 (E.D.Cal.1998)("when a party is given leave to amend a complaint to add new parties, Rule 4(m) provides that party with [90] days to serve the amended complaint.); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1137, at 377 (2002).  Therefore, the requirements of 15(c) must also be construed as prospective. Plaintiff has 90 days from the filing of the amended complaint to serve the newly added defendants, or to show that they received notice such that they will not be prejudiced or

---

[4] The presumptive deadline in Rule 4(m) was reduced from 120 to 90 days in December, 2015. According to the committee notes, the purpose of the 2015 amendment was to reduce delay at the beginning of litigation.

knew or should have known that the action would have been brought against it, but for a mistake in identity.

Even if the requirement of 15(c)(1)(C) were not prospective, Plaintiff has shown good cause for why he was unable to add the newly named defendants prior to now. Thus, under Rule 4(m) the Court would be required to give Plaintiff an extension of time to serve the amended complaint on the new defendants, and that time frame would be applied to the notice requirements of 15(c)(1)(C). Not to do so would create the absurd result of requiring Plaintiff to have given notice to a prospective party before Plaintiff even knew of the party's existence or involvement in the case. Such an absurd result is does not comport with the interests of justice.

## ORDER

The Court finds no bad faith, undue delay, prejudice to the opposing party, and/or futility in the Plaintiff's proposed amendments. Additionally, Plaintiff has raised a question of fact as to whether the statute of limitations should be equitably tolled due to the defendants' fraudulent concealment. Even if it is not tolled, the proposed amendments relate back to the original complaint. For all of these reasons, and because leave to amend should be freely granted when justice so requires, Plaintiff's motion for leave to file an amended complaint (#1) is GRANTED. Plaintiff shall file a clean copy of the First Amended Complaint by April 1, 2025.

IT IS SO ORDERED and DATED this _19_ day of March, 2024.

_____
MARK D. CLARKE
United States Magistrate Judge